## Lees, Appellant, *v.* Phila. & Reading R. R. Co.

*Negligence—Railroad—Grade crossing—" Stop, look and listen."*

In an action by a husband against a railroad company to recover damages for the death of his wife killed at a grade crossing, it is proper to enter a compulsory nonsuit where the evidence for the plaintiff shows that, at the point where the accident occurred, there were three main tracks and a siding, and that the deceased crossed the siding and one track before she reached the track upon which she was struck, and that on both the siding and first track she could have had an unobstructed view of the railroad for a distance of nine hundred feet in the direction from which the train came which struck her.

Argued Jan. 23, 1893. Appeal, No. 15, Jan. T., 1893, by plaintiff, Samuel Lees, from judgment of C. P. No. 2, Phila. Co., June T., 1890, No. 430, entering compulsory nonsuit. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass by husband for death of his wife.

At the trial, before FELL, J., it appeared from testimony offered on behalf of plaintiff that, on Nov. 23, 1889, plaintiff's wife was killed at the grade crossing where defendant's railroad crosses Hunting Park avenue. At this point there were three main tracks and a siding. The siding extended into a coal shed standing in the southwestern corner of the intersection of the street and railroad. To a person approaching the railroad from the west there was a view southward along the railroad before the coal shed was reached, but on nearing the track the shed obstructed the view until the siding was reached and partly crossed. From a point on the siding and on the first main track the railroad could be seen to the south for a distance of nine hundred feet. Mrs. Lees approached the railroad along the north side of the street from the westward, and walked across the siding and the first main track on to the second main track, where she was struck by an express train coming from the south. About the time Mrs. Lees started to cross, a carriage started to cross the tracks from the westward, and a coal cart started to cross from the opposite direction. Both succeeded in crossing in safety. The wagon, however, was

caught by the descending gate and broken. The driver of the carriage shouted to Mrs. Lees to stay back, but he stated that he did not suppose that she heard him, for the engine was whistling, and it was hard to hear.

The driver of the carriage testified in part as follows: " Q. Where was the lady when you called to her? A. She crossed the track about the same way that I was crossing. I was going at an ordinary jog, and I happened to see the lady. She was a short kind of lady. I happened to see her walking across, and as soon as I heard the whistle I saw she would get struck, because the train was coming at a very good gait. Q. She was actually on the track when you saw her? A. I won't swear about that. She was not on the track when I first took notice of her; she was a little west of the track. I saw her about the pavement, right on the pavement, about to cross the track. Q. When you heard the whistle and turned to call to her she was then on the track? A. Yes, I presume she was. She was about on the track. I suppose she got on the track about the time the whistle blowed. Cross-examined, by Mr. Hart: Q. You say she had got on the track. Which track do you mean by Ruffner's siding? A. I mean the south-bound track, about the west track. Q. That was the first track she would strike? A. The first track, the one the cars run into Ruffner's coal yard. Q. Before she would come to the track on which she was struck, she would have to cross that track and another one? A. She would have to cross three tracks. Q. So that when the whistle blew, you say she was at Ruffner's siding? A. I suppose that was about where she was."

The court entered a compulsory nonsuit and subsequently refused to take it off. Plaintiff appealed.

*Error assigned* was refusal to take off nonsuit.

*J. Howard Gendell*, for appellant, cited : Schum v. R. R., 107 Pa. 8; Lake Shore, etc., Ry. v. Frantz, 127 Pa. 297; Ellis v. Lake Shore, etc., R. R., 138 Pa. 506; Neiman v. Del. & Hudson Canal Co., 149 Pa. 138; Penna. R. R. v. Garvey, 108 Pa. 369; Werner v. R. R., 89 Pa. 59; Schall v. Cole, 107 Pa. 1; Leggett v. R. R., 143 Pa. 39; Phila. & Reading R. R. v. Carr, 99 Pa. 505.

*Gavin W. Hart*, for appellee, cited: Carroll v. R. R., 12 W. N. 348; Moore v. R. R., 108 Pa. 349; Bell v. R. R., 122 Pa. 58; Marland v. R. R., 123 Pa. 487; Morgan v. R. R., 23 W. N. 189; Greenwood v. R. R., 124 Pa. 572; Mooney v. R. R., 126 Pa. 244; Aiken v. R. R., 130 Pa. 380; Irey v. R. R., 132 Pa. 563; Blight v. R. R., 143 Pa. 10; Hauser v. R. R., 147 Pa. 440; Myers v. R. R., 150 Pa. 386.

PER CURIAM, February 6, 1893:

Judgment affirmed.

## Gibbons, Appellant, *v.* Gaffney.

[Marked to be reported.]

*Equity—Deed—Principal and surety—Equitable estate—Costs.*

Gaffney purchased from Throop and others a lot of land for $300, and secured the vendors by a confession of judgment contained in the written agreement of sale. Gaffney erected a building upon the land, and a mechanic's lien was entered therefor, upon which judgment was obtained. Execution was issued, and Gibbons, the owner of the mechanic's lien, bid in the property for one thousand dollars. Out of the proceeds Gibbons was paid the amount of his lien, and a balance of $326 was left in the hands of the sheriff. Subsequently the vendors of the land assigned to Hulslander et al. the balance of purchase money due, $298, and judgment was entered in their favor on the warrant of attorney contained in the agreement, and the fund in the hands of the sheriff was levied upon. The vendors did not deliver or tender a deed for the land. *Held:*

1. That the land in the hands of Gibbons was responsible for the balance of the purchase money, and that Gaffney stood merely in the relation of a surety towards it.

2. That Hulslander et al. were not entitled to the fund in court until a deed was made by the vendors to Gaffney subject to the equitable estate in Gibbons, and an assignment was made by Hulslander et al. of the purchase money judgment to enable Gaffney to enforce it against the lands in the hands of Gibbons.

3. That as Hulslander et al. had no right to enter up judgment and issue execution until they had brought into court a proper deed, two thirds of the costs of the audit should be imposed upon them, payable out of the fund which should be awarded to them.

4. That the decree of the lower court ordering a tender of a sufficient deed within thirty days as a condition of the award of the fund to Hulslander et al. should be modified when affirmed in the Supreme Court so